**IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MARYLAND**
**(Northern Division)**

| | |
|---|---|
| B.S.,<br>*(Plaintiff proceeds under pseudonym; true name, address, and identifying information filed under seal pursuant to simultaneously-filed Motion to Proceed Under Pseudonym)*<br><br>        Plaintiff,<br><br>*v.*<br><br>AKSHAR CORPORATION d/b/a REGAL INN & SUITES<br>8005 Pulaski Highway<br>Rosedale, MD 21237<br><br>*Serve on Registered Agent:*<br>Jatin Thakkar<br>8005 Pulaski Highway<br>Rosedale, MD 21237-2715,<br><br>        Defendant. | Civil Action No.: |

**COMPLAINT**

**COMES NOW** Plaintiff B.S., by and through undersigned counsel, brings this civil action against Defendant Akshar Corporation d/b/a Regal Inn & Suites ("Regal Inn"), and in support thereof alleges as follows:

**PRELIMINARY STATEMENT**

This is a civil action brought pursuant to the Trafficking Victims Protection Reauthorization Act ("TVPRA"), 18 U.S.C. § 1595, by a survivor of sex trafficking who was repeatedly and violently forced to engage in commercial sex acts at the Regal Inn & Suites in Rosedale, Maryland, from 2014 through 2017. During that three-year period, Defendant knowingly benefited financially from the sexual exploitation of Plaintiff by renting rooms to her

trafficker and providing Wi-Fi that was used to advertise Plaintiff for commercial sex, all while Defendant's employees observed unmistakable signs of human trafficking and did nothing to intervene. This action seeks compensatory damages, punitive damages, and attorney fees as provided by federal law.

## PARTIES

1.      Plaintiff B.S. is a natural person and a survivor of sex trafficking. Plaintiff proceeds under a pseudonym in order to protect her safety, privacy, and identity, consistent with the sensitive nature of the claims alleged herein. Plaintiff will file a contemporaneous motion to proceed pseudonymously and to seal identifying information. Plaintiff's true name and identifying information will be disclosed to the Court under seal and to Defendant under appropriate protective order.

2.      Defendant Akshar Corporation is a business entity operating the Regal Inn & Suites, located at 8005 Pulaski Highway, Rosedale, Maryland 21237, Baltimore County. At all times relevant to this Complaint, Defendant owned, operated, managed, and controlled the Regal Inn & Suites and is responsible for the actions and omissions of its employees, managers, and agents.

## JURISDICTION AND VENUE

3.      This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because this action arises under the laws of the United States, specifically 18 U.S.C. § 1595 of the Trafficking Victims Protection Reauthorization Act.

4.      Venue is proper in the District of Maryland pursuant to 28 U.S.C. § 1391(b) because Defendant resides in this district and a substantial part of the events giving rise to Plaintiff's claims occurred in this district, specifically at 8005 Pulaski Highway, Rosedale, Maryland 21237.

**TIMELINESS**

5.      Pursuant to 18 U.S.C. § 1595(c), no action may be maintained under subsection (a) unless it is commenced not later than 10 years after the cause of action arose. Plaintiff's cause of action arose from a continuing pattern of trafficking that occurred at the Regal Inn & Suites from 2014 through 2017. The last act of trafficking at Defendant's property occurred in 2017. Pursuant to the continuing violation doctrine and the plain language of § 1595(c), this action is timely as it is brought within ten years of the last trafficking act at Defendant's property.

6.      In the alternative, even if this Court were to apply accrual from an earlier date, equitable tolling applies because Plaintiff's trafficker exercised pervasive physical and psychological control over Plaintiff throughout the trafficking period, including through physical abuse, violence, psychological manipulation, threats to kill her, withholding of food, and control over every aspect of her life including her ability to contact family and friends. These conditions prevented Plaintiff from seeking legal redress during the period of exploitation, consistent with the equitable tolling principles recognized in *Cruz v. Maypa*, 773 F.3d 138 (4th Cir. 2014), and the SOL was tolled through at least 2017 when the trafficking at Defendant's property ended.

**FACTUAL ALLEGATIONS**

**A.  Defendant Akshar Corporation Owns and Operates the Regal Inn & Suites.**

7.      Akshar Corporation has owned the property at 8005 Pulaski Highway, Rosedale, Maryland 21237 since August 2003, having purchased it for $1,800,000.

8.      Regal Inn & Suites was established in 2014 as a trade name, filing No. T00387723, active in the State of Maryland. Jatin Thakkar served as Owner of the property from November 1995 through at least March 2018, and as General Manager as of January 2023.

9. The property is located at 8005 Pulaski Highway, Rosedale, MD 21237-2715, Baltimore County, Maryland, in the Baltimore metropolitan area.

**B.      Plaintiff B.S. Was a Victim of Sex Trafficking at the Regal Inn & Suites.**

10. Plaintiff B.S. was trafficked at Regal Inn & Suites located at 8005 Pulaski Highway, Rosedale, MD at least one to two times a month and sometimes more, for a three-year period from 2014 to 2017, beginning when she was twenty-three years old.

11. Plaintiff first met her trafficker and began what started as a romantic relationship but soon turned into a long cycle of sexual exploitation and abuse. Plaintiff's trafficker used physical abuse, violence, and psychological manipulation to coerce Plaintiff into sex trafficking.

12. Plaintiff's trafficker was assisted at times by a male associate who would monitor Plaintiff when the trafficker was absent. The identities of these individuals are set forth in Plaintiff's sealed addendum.

13. If Plaintiff did not follow her trafficker's orders, he would often physically abuse her, threaten her, humiliate and degrade her, and withhold food and starve Plaintiff as a form of punishment. Plaintiff suffered extreme physical abuse, including her trafficker choking her and beating her and threatening to kill her.

14. Plaintiff's trafficker controlled every aspect of her life, including her ability to contact family and friends, when she would be allowed to eat, and where she could go. Plaintiff was repeatedly raped by significantly older men each night while under the control of her trafficker.

15. At the Regal Inn, Plaintiff was compelled by force, fraud, and coercion to engage in sex acts with countless strange men in exchange for money or some other benefit.

16.    Plaintiff was housed in various rooms at the Regal Inn during the trafficking period, the specific locations of which are identified in Plaintiff's sealed addendum.

17.    Plaintiff stayed at Regal Inn so frequently that the front desk staff no longer required her to provide identification and even gave her, her johns, or her trafficker discounted rates for the rooms. This demonstrates that Defendant's employees had ongoing, repeated, and direct contact with Plaintiff and her trafficker throughout the three-year trafficking period.

**C.    Defendant Knowingly Benefited Financially for the Sex Trafficking Venture.**

18.    Plaintiff's trafficker rented rooms at the Regal Inn as the venue for Plaintiff's exploitation and utilized phones connected to Regal Inn's Wi-Fi to solicit and advertise Plaintiff for commercial sex against her will.

19.    Plaintiff and/or her trafficker connected to Regal Inn's Wi-Fi at the Regal Inn to post ads of Plaintiff on websites individuals visited to purchase sex. In addition to posting advertisements using the Regal Inn's Wi-Fi, Plaintiff's trafficker also used the internet to communicate with and respond to individuals seeking to pay for sex with Plaintiff. The trafficker negotiated meeting times and prices for sexual services online using Regal Inn's Wi-Fi.

20.    Defendant collected room rental fees from Plaintiff's trafficker for each and every stay during which Plaintiff was sexually exploited. Defendant thereby knowingly received financial benefit from the commercial sex trafficking venture conducted on its premises.

21.    Defendant further benefited from providing Wi-Fi service to Plaintiff's trafficker, which was used to advertise, solicit, and facilitate the commercial sexual exploitation of Plaintiff.

**D.    Defendant Knew or Should Have Known That Plaintiff Was Being Trafficked.**

22. Throughout the three-year period of trafficking at the Regal Inn, Defendant's employees, managers, and agents were confronted with overwhelming, unmistakable, and persistent red flags of sex trafficking that were observable on a regular and recurring basis.

23. The red flags that Plaintiff was being trafficked included the following: Plaintiff and her trafficker paying for stays in cash and for extended stays on a day-by-day basis; requesting a room away from other guests; obvious signs of illegal drug use; frequent requests for linen changes; large numbers of condoms in the trash; large numbers of male visitors asking for Plaintiff or her trafficker at the front desk; multiple men coming in and out of the room; asking the front desk not to be disturbed; loud noises of abuse audible to staff and other rooms; living out of the hotel room; loitering and soliciting on hotel grounds where Plaintiff's appearance showed clear signs of physical abuse like bruising; and Plaintiff and other female trafficking victims wearing clothing inappropriate for the weather.

24. At a minimum, the foot traffic in and out of Plaintiff's room was heavy at all hours of the day and night. Plaintiff consistently appeared emaciated, unwashed, sleep deprived and distraught in front of hotel staff. She also avoided eye contact during interactions with anyone outside of the room and it was physically apparent she was being brutally beaten.

25. At the Regal Inn, Plaintiff's trafficker regularly abused her in the hotel room. These altercations resulted in loud yelling, sounds of abuse, and Plaintiff's screams for help coming from her hotel room.

26. Defendant's employees' knowledge of these facts is imputable to Defendant as a matter of law.

27.     A review of the internet records associated with Regal Inn's Wi-Fi network would have revealed that the network was being used to post commercial sex advertisements and solicit buyers for sex with Plaintiff. Defendant possessed this data and failed to review it.

**E.     Defendant Failed to Exercise Reasonable Diligence Required Under the TVPRA.**

28.     Neither Regal Inn, its managers, nor its employees did anything to help Plaintiff even though she was clearly in an unsafe situation. Instead, Regal Inn chose to continue profiting every night Plaintiff stayed at the Regal Inn.

29.     Upon information and belief, at all times relevant to this Complaint, Defendant had no human trafficking training, policies, procedures, or intervention protocols in place for its employees. Defendant made no effort to detect, report, or prevent sex trafficking occurring on its premises despite possessing information that would have compelled a reasonable and diligent operator to act.

30.     Defendant had access to police reports, lawsuits, and local news stories that evidenced a chronic local problem of sex trafficking. A simple search of news reports, local records, and statistics clearly shows that human trafficking is a common epidemic near the Regal Inn where Plaintiff was trafficked.

31.     LexisNexis Community Crime Map data for 8005 Pulaski Highway, Rosedale, MD 21237 reflects 500 criminal records associated with the immediate area surrounding the Regal Inn & Suites, further demonstrating the pervasive criminal environment of which Defendant was or should have been aware.

32.     Property records reflect 44 registered sex offenders in the vicinity of 8005 Pulaski Highway, Rosedale, Maryland, information that was publicly available and accessible to Defendant.

33.    Public reviews of the Regal Inn further demonstrate that Defendant was aware of, or willfully ignored, the rampant illegal activity occurring on its premises. One reviewer wrote: "Absolutely without a doubt would not recommend this hotel to anyone lot of drugs and prostitution activity absolutely unsafe environment for children even though it's cheap it's not worth the price you might pay with all the illegal activity going on there." Another reviewer wrote: "Do not stay here. management does not run this place the thugs that rome the parking lot and live at the hotel do. Drug dealing going on shady people hanging around the parking lot and our truck, you just don't feel safe... This Place is a drug infested RAT HOLE and should be shut down." Defendant's own owner, Jatin Thakkar, personally responded to this review in August 2021, demonstrating that Defendant was aware of its public reputation and the nature of the conditions at the property.

34.    Upon information and belief, Defendant did not restrict or modify its Wi-Fi policies, did not review Wi-Fi usage data to identify potential trafficking activity, and took no steps to audit, investigate, or respond to the ongoing trafficking that was plainly occurring at the property.

## CAUSE OF ACTION

### Civil Liability Under the Trafficking Victims Protection Reauthorization Act
### 18 U.S.C. § 1595

35.    Plaintiff incorporates by reference all preceding paragraphs as though fully set forth herein.

36.    Pursuant to 18 U.S.C. § 1595(a), an individual who is a victim of a violation of this chapter may bring a civil action against whoever knowingly benefits, or attempts or conspires to benefit, financially or by receiving anything of value from participation in a venture which that person knew or should have known has engaged in an act in violation of this chapter.

37.     At all relevant times, Plaintiff was a victim of sex trafficking in violation of 18 U.S.C. § 1591, which prohibits the harboring, maintaining, and obtaining of a person for the purpose of commercial sex through force, fraud, or coercion.

38.     Defendant knowingly benefited financially from the sex trafficking venture by collecting room rental fees and Wi-Fi revenue from Plaintiff's trafficker on a repeated basis from 2014 through 2017.

39.     Defendant participated in a venture that constituted a violation of 18 U.S.C. § 1591 by harboring, maintaining, and providing facilities and services that enabled the repeated commercial sexual exploitation of Plaintiff on its premises.

40.     Defendant knew or should have known, based on the persistent, obvious, and recurring red flags described above including Plaintiff's visible physical abuse, heavy foot traffic of male visitors, cash payments, requests for seclusion, and use of Defendant's own Wi-Fi to advertise commercial sex that it was participating in a sex trafficking venture in violation of the TVPRA.

41.     As a direct and proximate result of Defendant's knowing participation in and benefit from the sex trafficking venture, Plaintiff has suffered, and continues to suffer, severe damages as set forth below.

### **DAMAGES**

42.     As a direct and proximate result of Defendant's violations of the TVPRA, Plaintiff has sustained the following damages, for which Defendant is liable:

   **a. Economic Damages:** As a result of being trafficked, Plaintiff was unable to work and make a living with regular employment and lost marketplace opportunities. Plaintiff has significant lost wages and lost earning capacity, totaling hundreds of thousands of

dollars. Plaintiff also suffered past and future costs associated with recovery from trafficking, including physical and psychological treatment costs, to be calculated by expert witnesses including a life care planner.

**b. Non-Economic Damages:** Plaintiff suffered profound, devastating, and permanent physical, psychological, and emotional injuries as a result of being repeatedly raped, beaten, coerced, and exploited over a three-year period at Defendant's property. Plaintiff has wanted to be a police officer in law enforcement ever since she was seven years old. Since being trafficked, she has tried numerous times to join the police academy, but has been unable to do so as a result of her trafficking. The full extent of Plaintiff's non-economic damages is to be determined by a jury.

**c. Attorney Fees:** Pursuant to 18 U.S.C. § 1595(a), Plaintiff is entitled to recover reasonable attorney fees as part of her damages.

## PRAYER FOR RELIEF

**WHEREFORE** Plaintiff B.S. respectfully requests that this Court enter judgment in her favor and against Defendant Akshar Corporation d/b/a Regal Inn & Suites as follows:

1. Compensatory damages in an amount to be determined at trial, including past and future economic damages, lost wages, lost earning capacity, future medical and therapeutic care costs, and non-economic damages for physical and psychological pain, suffering, trauma, and loss of enjoyment of life;

2. Punitive damages in an amount sufficient to punish and deter Defendant's willful, wanton, and reckless conduct;

3. Reasonable attorney fees and costs of litigation pursuant to 18 U.S.C. § 1595(a);

4. Pre- and post-judgment interest as permitted by law;

5. A protective order permitting Plaintiff to proceed under the pseudonym "B.S." and sealing Plaintiff's identifying information from the public record; and

6. Such other and further relief as this Court deems just and proper.

## JURY TRIAL DEMAND

Plaintiff respectfully requests a jury trial on all issued raised herein.

Dated: July 20, 2026

Respectfully submitted,

NACE LAW GROUP

_____

Christopher T. Nace, Esq.
D. Md. Bar:
1025 Thomas Jefferson St., NW
Suite 810
Washington, DC 20007
202-463-1999 – Telephone
202-223-6824 – Facsimile
ctnace@nacelawgroup.com
*Counsel for Plaintiff*

_____

Ian Stegmaier, Esq.
Babin Law, LLC
10 West Broad Street, Suite 900
Columbus, Ohio 43215
*(Pro Hac Vice Motion Filed*

*Simultaneously)*

*Counsel for Plaintiff*

Note on Simultaneously Filed Documents:
Pursuant to L.R. 103.1(a), a Civil Cover Sheet (AO Form JS-44) is filed simultaneously herewith.
Pursuant to L.R. 103.3, a Certificate of Interested Persons and Corporate Disclosure Statement is filed simultaneously herewith as a separate document.